UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUTHIE MAE PEARSON,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

Hon. Ellen S. Carmody

Case No. 1:11-cv-1146

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security that Plaintiff was overpaid disability benefits over a six-year period and that because Plaintiff was "not without fault in causing the overpayment," Plaintiff must repay the amount in question. On February 17, 2011, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #8).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

1

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## ANALYSIS OF THE ALJ'S DECISION

Plaintiff applied for Supplemental Security Income (SSI) benefits on August 25, 2000. (Tr. 31). In 2003, Plaintiff was found to be disabled and awarded back benefits as well as monthly benefits going forward in an amount based on "the premise that [Plaintiff] was not residing with a spouse from whom income would be deemed." (Tr. 31). In 2008, Lonnie Pearson applied for disability benefits and informed Social Security officials that he was married to and residing with Plaintiff. (Tr. 31-32). Social Security officials investigated the matter and determined that Plaintiff and Lonnie Pearson had been married and living together since Plaintiff began receiving disability benefits in 2003. (Tr. 32). After accounting for Lonnie Pearson's income during the relevant time period, it was determined that Plaintiff had received an overpayment of benefits in the amount of twenty-six thousand six-hundred seven dollars and forty-six cents ($26,607.46). (Tr. 32).

Plaintiff appealed this determination and on November 10, 2009, Plaintiff participated in an administrative hearing before ALJ Lawrence Blatnik. (Tr. 127-70). In a written decision dated January 29, 2010, the ALJ determined that Plaintiff "was overpaid supplemental security income benefits totaling $26,607.46." (Tr. 30-34). Finding that Plaintiff "was not without fault in receiving and accepting the incorrectly issued overpayments," the ALJ concluded that Plaintiff "is liable for repayment of the debt." (Tr. 34). The Appeals Council declined to review the ALJ's determination,

rendering it the Commissioner's final decision in the matter. (Tr. 3-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

To receive Supplemental Security Income (SSI) benefits, the recipient must satisfy the resource and income limitations established by the Social Security Act. *See* 42 U.S.C. §§ 1381a, 1382(a); 20 C.F.R. § 416.202(c). Moreover, the amount which an SSI recipient receives in benefits is based in part upon her income and resources (e.g., income from a spouse with whom the recipient is residing). *See* 42 U.S.C. §§ 1382(a)(1)(A), 1382a. Recipients of SSI benefits are required to report to the Social Security Administration any change in their "living arrangements. . .income. . .[or] resources." 20 C.F.R. § 404.708.

Where an individual is incorrectly paid more in SSI benefits than she is entitled, "proper adjustment or recovery shall. . .be made by appropriate adjustments in future payments to such individual." 42 U.S.C. § 1383(b)(1)(A); *see also*, 20 C.F.R. §§ 416.537, 416.550-90. The obligation to repay any such overpayment can be waived only in certain limited circumstances: (1) where the recipient is "without fault;" and (2) repayment would (a) defeat the purpose of the Social Security Act; (b) be against equity and good conscience; or (c) impede efficient or effective administration of the SSI program due to the "small amount involved." *See* 42 U.S.C. § 1383(b)(1)(B); 20 C.F.R. § 416.550.

Whether a recipient is "without fault" with respect to an overpayment of benefits "depends on all the pertinent circumstances surrounding the overpayment in the particular case." 20 C.F.R. § 416.552. Specifically, the Social Security Administration will consider: (1) the recipient's understanding of the reporting requirements; (2) the agreement to report events affecting payments; (3) knowledge of the occurrence of events that should have been reported; (4) efforts to

comply with the reporting requirements; (5) opportunities to comply with the reporting requirements; (6) understanding of the obligation to return checks which were not due; and (7) the ability to comply with the reporting requirements. 20 C.F.R. § 416.552. A recipient will, however, "be found to have been at fault in connection with an overpayment when an incorrect payment resulted from": (1) failure to furnish information which the recipient knew or should have known was material; (2) an incorrect statement made by the recipient which she knew or should have known was incorrect (including the recipient furnishing her opinion or conclusion when she was asked for facts); or (3) the recipient did not return a payment which she known or could have been expected to know was incorrect. 20 C.F.R. § 416.552.

Moreover, "no showing of bad faith is required; rather, an honest mistake may be sufficient to constitute fault." *Masias v. Doe*, 2012 WL 3704824 at *4 (E.D.N.Y., Aug. 24, 2012) (citation omitted). Likewise, the fact that the Social Security Administration "may have been at fault in making the overpayment does not relieve the recipient from liability for repayment if the recipient also was at fault." *Id.*

As previously noted, Plaintiff's SSI benefits were calculated based on the premise that she was not residing with an income earning spouse. However, the Commissioner subsequently determined that Plaintiff had, in fact, been married to and living with her husband, Lonnie Pearson, since she began receiving benefits in 2003. Taking into account the income Lonnie Pearson earned during the relevant time period, the Commissioner determined that Plaintiff had received an overpayment of benefits in excess of twenty-six thousand dollars. Finding that Plaintiff "was not without fault in receiving and accepting the incorrectly issued overpayments," the Commissioner concluded that Plaintiff "is liable for repayment of the debt."

Plaintiff does not dispute that she was married to Lonnie Pearson during the time period in question. (Tr. 65, 133). Rather, Plaintiff disputes the Commissioner's determination that she and Lonnie Pearson lived together as husband and wife during the relevant time period. The evidence of record amply supports the Commissioner's determination.

On August 29, 2003, Plaintiff and Lonnie Pearson executed a lease for an apartment. (Tr. 100-08). Plaintiff was identified on the lease as a "co-tenant" with her husband, Lonnie Pearson. (Tr. 101). On August 1, 2007, Plaintiff and Lonnie Pearson executed an addendum to this lease. (Tr. 66). This addendum indicates that Plaintiff and Lonnie Pearson were jointly residing, as husband and wife, in the subject premises. (Tr. 66). On February 26, 2007, Plaintiff requested a personal protection order against her husband, Lonnie Pearson. (Tr. 123). In the request, Plaintiff identified Lonnie Pearson as her husband and indicated that the pair lived together. (Tr. 123).

Social Security Administration "Report of Contact" notes dated June 2008, indicate that when Lonnie Pearson initially applied for disability benefits he reported that he was married to and residing with Plaintiff. (Tr. 97). When Lonnie Pearson was asked about the fact that Plaintiff had not indicated that she was living with her husband, Lonnie Pearson "changed his story and stated that he only got his mail" at Plaintiff's residence. (Tr. 97).

At the administrative hearing, Plaintiff testified that Lonnie Pearson co-signed the aforementioned lease so that she could obtain the apartment she desired. (Tr. 133-38). Plaintiff asserted, however, that Lonnie Pearson rarely resided with her. (Tr. 133-40). Plaintiff later acknowledged that her husband paid the rent on occasion and had a key to the apartment. (Tr. 151-63). When asked by the ALJ why she failed to report to Social Security officials that she was married to Lonnie Pearson, Plaintiff responded that she was not married to Lonnie Pearson when she

6

applied for benefits. (Tr. 144-45). As the ALJ noted, however, Plaintiff married Lonnie Pearson in 1996 and applied for disability benefits four years later. (Tr. 31, 65, 145). Plaintiff also conceded that Lonnie Pearson did live with her beginning in 2008. (Tr. 139-40).

In denying Plaintiff's appeal of the decision that she was obligated to repay the amount she was overpaid, the ALJ concluded that Plaintiff's testimony at the administrative hearing "was somewhat variable, and at times, seemingly inconsistent with the available evidence of record." (Tr. 32). As is well recognized, it is the ALJ's obligation to weigh the evidence and assess the credibility of witnesses. *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). The ALJ concluded that Plaintiff's "statements concerning her living arrangement are not found to be fully credible." (Tr. 33). This determination is supported by substantial evidence.

As the ALJ further observed, the evidence of record revealed that: (1) Plaintiff and Lonnie Pearson were married and listed as joint tenants for, and occupants of, an apartment to which Lonnie Pearson had a key and access; (2) when Lonnie Pearson filed for benefits, he initially stated that he resided with Plaintiff in the subject apartment; and (3) despite initially denying that Lonnie Pearson lived with her in the subject apartment, Plaintiff eventually conceded that Lonnie Pearson did, in fact, live with her beginning in 2008. (Tr. 33).

Accordingly, the ALJ concluded that Plaintiff "is not without fault in causing the overpayment," as she "did not inform the Field Office of her spouse's residence in her dwelling (either in 2003 when she claims he was not present, or in early 2008 when she now admits he was)." (Tr. 33). As the ALJ noted, Plaintiff "knew, or should have known, that this information was

material to her supplemental security income eligibility and payment amount." (Tr. 33). Accordingly, the ALJ concluded that Plaintiff "cannot be relieved of liability for the debt repayment." (Tr. 33). This determination is supported by substantial evidence of record and is consistent with the legal standard discussed above.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date:  November 28, 2012                             /s/ Ellen S. Carmody
                                                                   ELLEN S. CARMODY
                                                                   United States Magistrate Judge